UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JIMMIE SMITH, JR.                                          CIVIL ACTION

                                                           No. 21-1932
VERSUS                                                     c/w: No. 21-1934
                                                           REF: 21-1932

AMERICAN SUGAR REFINING, INC.                              SECTION I

ORDER & REASONS

Before the Court is a motion[1] by plaintiff, Jimmie Smith, Jr. ("Smith"), to

remand this case to the 34th Judicial District Court for the Parish of St. Bernard.

Defendant, American Sugar Refining, Inc. ("American Sugar") opposes[2] the motion.

For the reasons that follow, the motion to remand will be granted.

I. BACKGROUND

Smith filed the instant putative class action in the 34th Judicial District Court

on August 25, 2021.[3] The class action petition states that American Sugar owned and

operated a sugar refinery located at 7417 N. Peters Road in Arabi, Louisiana ("the

Domino Sugar Refinery").[4] The petition alleges that, on August 27, 2020 at

approximately 4:00 P.M., "a massive fire occurred at one of the silos at the Domino

Sugar Refinery which released harmful and hazardous substances that were

---

[1] R. Doc. No. 9
[2] R. Doc. No. 22.
[3] R. Doc. No. 1, at 1.
[4] R. Doc. No. 1-1, at 3 ¶ 7.

subsequently disbursed throughout the area."[5]

Smith, on behalf of a putative class, raises negligence and nuisance claims against American Sugar.[6] Smith defines the class as "[a]ll persons, natural or juridical, domiciled in and/or residing in the Parishes of St. Bernard and/or Orleans, State of Louisiana, who have sustained legally cognizable damages in the form of physical and emotional damages, nuisance, trespass, and interference with the enjoyment of their properties, as a result of the fire and/or emissions from the Domino Sugar Refinery on or around August 27, 2020[.]"[7]

Smith filed an irrevocable stipulation alongside his class petition.[8] The fifteen-paragraph stipulation states, among other things, that Smith and his attorneys "will not seek to enforce any judgment that may be awarded in excess of $75,000.00, exclusive of interests and costs for any one plaintiff individually."[9] Smith explains that the document contains this type of stipulation "literally stated ten different ways so as to resolve any ambiguity that [the plaintiff's] claim [does] not exceed the jurisdictional threshold under 28 U.S.C. § 1332(a)."[10] Additionally, Smith makes several stipulations as to the maximum individual damages of the unnamed members of the putative class,[11] and states that the aggregate amount of all claims in the

---

[5] *Id.* ¶ 8.

[6] R. Doc. No. 1-1, at 4–7 (stating claims under La. Civ. C. arts. 2315, 2316, 2317, 2317.1); *id.* at 7–8.

[7] *Id.* at 9.

[8] R. Doc. No. 1-1, at 13–16.

[9] *Id.* at 14, ¶ 7.

[10] R. Doc. No. 9-1, at 11.

[11] R. Doc. No. 1-1, at 14–16, ¶¶ 9, 13, 14, 15.

proposed class action does not exceed $5,000,000.00, exclusive of interests and costs.[12]

On October 21, 2021, American Sugar removed this action to federal court.[13] On the same date, American Sugar also removed *Alkurd et al. v. American Sugar Refining, Inc.*, No. 21-1934, a 48-plaintiff mass joinder action arising from the same explosion and raising the same legal claims. The Court consolidated the instant action with *Alkurd*.[14] On January 4, 2022, the Court granted a joint motion to remand the *Alkurd* action to state court.[15]

American Sugar asserts that federal jurisdiction exists pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).[16] Additionally, American Sugar asserts that the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).[17] As will be discussed in further detail below, it appears that American Sugar may intend to argue that the Court has diversity jurisdiction over Smith's claims, and therefore that the Court may exercise supplemental jurisdiction over the

---

[12] *Id.* at 15, ¶ 11.

[13] R. Doc. No. 1.

[14] R. Doc. No. 6.

[15] R. Doc. No. 25. The Court notes that, although Smith is the only named plaintiff in this action, Smith indicates in several instances that there are multiple named plaintiffs in this action. This error might be attributed to the fact that Smith's counsel prepared a similar memorandum in *Alkurd*, which has multiple named plaintiffs. Additionally, Smith raises some arguments seemingly in response to arguments that American Sugar makes in its *Alkurd* filings, but does not make in the instant action. *See, e.g.*, R. Doc. No. 9-1, at 13–16 (addressing the question whether an attorney may execute a stipulation on behalf of her client, which American Sugar raised in its *Alkurd* notice of removal, but not in the instant action).

[16] R. Doc. No. 1, ¶ 39.

[17] *Id.* ¶¶ 14, 39.

claims of the unnamed class members, pursuant to 28 U.S.C. § 1367.[18]

The parties agree that the requisite diversity of citizenship exists: Smith is domiciled in Louisiana and American Sugar is a Delaware corporation with its principal place of business in Florida.[19] However, Smith contends that the amount in controversy requirements set forth in Sections 1332(d) and 1332(a) have not been met.[20] Accordingly, Smith contends that this Court does not have subject matter jurisdiction over this action, and he seeks remand to state court.

## II. STANDARD OF LAW

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the United States Constitution or by Congress. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Pursuant to 28 U.S.C. § 1332(a), a district court has original jurisdiction over cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists. Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), a district court has original jurisdiction, subject to exceptions not applicable to the instant case, over putative class actions in which the amount in controversy exceeds $5,000,000 and minimal diversity exists.

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

---

[18] *Id.* ¶¶ 14, 39.

[19] *Id.* ¶¶ 3, 15, 16.

[20] R. Doc. No. 9-1, 7, 21–23.

4

district and division embracing the place where such action is pending," unless Congress provides otherwise. "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

When a removing party invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Smith v. Bank of America Corp.*, 605 F. App'x 311, 314 (5th Cir. 2015) (quoting *Manguno*, 276 F.3d at 723). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Carter v. Westlex Corp.*, 643 F. App'x 371, 374 (5th Cir. 2016) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)).

## III. DISCUSSION

### A. Jurisdiction Pursuant to 28 U.S.C. § 1332(d)

The Class Action Fairness Act ("CAFA") vests federal district courts with original jurisdiction over class actions in which the amount in controversy exceeds five million dollars and in which there is minimal diversity, meaning that "any member of a class of plaintiffs is a citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

Smith's class petition does not allege a specific dollar amount of damages and, indeed, Louisiana law prohibits plaintiffs from doing so. *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868 (5th Cir. 2002). Accordingly, when a defendant removes

an action from a Louisiana court on diversity jurisdiction grounds, the defendant must allege satisfaction of the jurisdictional amount in its notice of removal. *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015). If the plaintiff contests the defendant's allegations in a motion to remand, "the court must decide by a preponderance of the evidence whether the relevant amount in controversy is met." *Id.* (citing *Dart*, 135 S. Ct. at 553–54). "A removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." *Id.* (citing *Manguno*, 276 F.3d at 723; *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 231 (5th Cir. 2014)). In addition, the court may make "common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Id.* "The required 'demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he seeks.'" *Id.* (quoting *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010)).

The parties agree that there is diversity of citizenship between the named plaintiff and defendant in this action, but disagree regarding whether the amount in controversy exceeds $5 million. As relevant to determining the amount in controversy, the parties disagree over both the quantum of recovery that class members would likely receive and the size of the putative class. The Court will address each issue in turn.

6

### 1. Quantum of Recovery

Smith argues that the value of each class member's claim is not likely to exceed $5,000.[21] In support, Smith emphasizes the limited nature and effects of the explosion and fire. Smith states that "[s]ome residents very close to the refinery were ordered to shelter in place for several hours," and that "[a]ll of the plaintiffs [sic] were nervous and scared of such a large event occurring more or less in a residential neighborhood."[22] With respect to medical repercussions, Smith asserts that "[o]ther plaintiffs [sic] further downwind of the fire experienced short term (less than 1 day) respiratory symptoms and headaches from the noxious fumes emitted from the fire,"[23] and that "none of the plaintiffs named herein" received medical treatment related to the explosion and fire.[24] (As noted above, Smith refers to multiple named plaintiffs, even though he is the only named plaintiff in this action.)

Additionally, Smith cites to the awards granted in cases that Smith asserts

---

[21] R. Doc. No. 9-1, at 7.

[22] *Id.* at 7–8.

[23] *Id.* at 8.

[24] *Id.* at 10–11. Smith also cites to the irrevocable stipulation filed in conjunction with his class petition, in which he stipulates, among other things, that the alleged damages of each individual putative class member do not exceed $5,000, exclusive of costs and interests, and that the aggregate amount of all claims in the putative class action do not exceed $5 million, exclusive of costs and interests. R. Doc. No. 1-1, at 15–16 ¶¶ 11, 15. Smith correctly concedes that such a stipulation is not binding on unnamed class members. R. Doc. No. 9-1, at 23. *See also, e.g.*, *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 572 (E.D. La. 2019) (Morgan, J.) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013)). However, Smith nevertheless contends that the stipulation is "compelling evidence that the value of the unnamed class members clearly falls below this Court's jurisdictional threshold." R. Doc. No. 9-1, at 23. The Court fails to see how such a stipulation is compelling evidence and will disregard the stipulation insofar as it pertains to class members besides Smith.

involve incidents that are factually similar to, although more significant than, the instant matter.[25] For instance, Smith refers to *Aaron v. Exxon Mobil Corporation*, 271 So. 3d 205 (La. App. 1 Cir. Dec. 27, 2018), which resulted in judgments ranging from \$1,250 to \$2,500 per person. *Aaron* involved an explosion at an oil refinery, which caused a fire that burned from approximately 4:15 a.m. to 8:30 a.m. *Id.* at 208–09. The fire produced a "thick smoke plume" and "ash and debris." *Id.* "The debris, including asbestos particles . . . . landed on the people and property of the [surrounding residential area]." *Id.* The trial plaintiffs "experienced physical symptoms such as burning, irritated, and red eyes, sore throat, nausea, vomiting, and trouble breathing . . . . [which] lasted for a few days to several weeks." *Id.* at 222. Additionally, "the trial plaintiffs also experienced fear and fright based on the ensuing emergency and environmental response . . . . [and] regarding any adverse health effects that may arise as a result of the accident." *Id.*

Smith also raises the recently-decided *Spencer v. Valero Refining Meraux, LLC*, 2021-C-0383 (La. App. 4 Cir. Feb. 2, 2022), --- So.3d ---,[26] arising from an explosion and fire at a Valero refinery and affirming damage awards for claims of negligent infliction of emotional distress absent physical injury.[27] The plaintiffs, Brittany Spencer and her minor child, lived 2,000 feet away from the site of the explosion, which caused a shock wave that shook their apartment building and woke

---

[25] R. Doc. No. 9-1, at 7–10.
[26] Attached as R. Doc. No. 32-1.
[27] *Id.* at 1, 6.

them in the middle of the night.[28] A "huge fire ball or flame appeared above the refinery, lighting up the night sky."[29] The ensuing fire was visible to the public for almost twelve hours.[30] Plaintiff Spencer "was four months pregnant, [and] was afraid for her family's safety and specifically about whether harmful chemicals were released into the air."[31] These concerns "led to the family's departure from their apartment between April 10 and 13, 2020, and after their return, Ms. Spencer refused to allow her children to play outside."[32] The court concluded that, "although Valero tested the air in the community and found it contained no dangerous chemical levels," Spencer's concerns were reasonable because "Valero failed to contemporaneously communicate this information to the public."[33] The court affirmed damage awards of $1,000 and $250 for Spencer and her minor child, respectively.

American Sugar sketches a dramatically larger estimate for potential recovery in its notice of removal, indicating that class members' individual claims would exceed $75,000.[34] In support, American Sugar cites to Louisiana caselaw arising from situations that are largely factually dissimilar, and far more severe, than the

---

[28] *Id.*

[29] *Id.* at 6.

[30] *Id.* at 7.

[31] *Id.* at 8.

[32] *Id.*

[33] *Id.* at 10.

[34] R. Doc. No. 1, ¶ 35 ("Using a very conservative estimate of 100 class members and a potential damages award for each class member in line with the analysis outlined above for Plaintiff's damages claim [which American Sugar estimates exceeds $75,000]. . . . [t]he amount in controversy for the class damages would be in excess of $7.5 million[.]").

situation at issue in this case. For instance, American Sugar cites awards for "fear and fright" of latent disease caused by exposure to environmental contaminants in cases where the plaintiffs were exposed to contaminants for periods ranging from months to years.[35] It also cites to cases in which plaintiffs were awarded substantial awards for serious or permanent disabilities caused by exposure to toxic substances.[36]

This area of caselaw is highly fact-specific, and therefore, no case will provide precise guidance for the instant matter. Indeed, in other refinery explosion cases, the Fifth Circuit has indicated that "the comparisons that the Defendants–Appellants make to damage recovery in similar cases [are] too attenuated to satisfy their burden [of demonstrating the jurisdictional amount by a preponderance of the evidence]." *Berniard*, 481 F. App'x at 863–64; *accord Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228, 232 (5th Cir. 2014); *see also Cannon v. Dow Chemicals Co.*, No. 08-1397, 2008 WL 2308897, at *3 (E.D. La. June 2, 2008) (Berrigan, J.). That being said, the Court, in making "common-sense inferences about the amount put at stake by the injuries the plaintiffs claim," *Robertson*, 814 F.3d at 240, concludes that Smith's cases are far more similar to the instant action than those of American Sugar. The Court concurs with Smith's assessment[37] that its proffered cases, *Aaron* and *Spencer*, involve factually similar, although more significant, incidents. For instance, plaintiffs

---

[35] *Id.* ¶¶ 21–24 (citing *Bonnette v. Conoco, Inc.* 837 So.2d 1219 (La. 01/28/2003); *Lester v. Exxon Mobil Corp.*, 120 So. 3d 767 (La. App. 4 Cir. 06/26/2013); *Lemaire v. CIBA-GEIGY Corp.*, 1999 1809 (La. App. 1 Cir. 6/22/01), 793 So. 2d 336).

[36] *Id.* ¶ 23 (citing *Lasha v. Olin Corp.*, 91-459 (La. App. 3 Cir. 3/2/94), 634 So. 2d 1354; *Sandbom v. BASF Wyandotte Corp.*, 95-0335 (La. App. 1 Cir. 4/30/96), 674 So. 2d 349; *Haydel v. Hercules Transport, Inc.*, 94-1246 (La. App. 1 Cir. 4/7/95), 654 So. 2d 418).

[37] R. Doc. No. 9-1, at 8, 10.

in *Aaron* experienced physical symptoms for several days to weeks, whereas Smith has indicated that neither Smith nor any of the *Alkurd* plaintiffs sought medical treatment relating to the Domino Sugar Refinery explosion, although some plaintiffs experienced "respiratory symptoms and headaches" lasting "less than 1 day."[38] The Valero incident at issue in *Spencer* appears to have been greater in magnitude and duration than the incident at issue in this action, and among other things, it caused the *Spencer* plaintiffs to leave their home for several days out of fear of chemical exposure.

### 2. Class Size

Smith's class action petition defines the putative class to include "[a]ll persons . . . residing in the Parishes of St. Bernard and/or Orleans, State of Louisiana, who have sustained legally cognizable damages . . . as a result of the fire and/or emissions from the Domino Sugar Refinery[.]"[39]

American Sugar raises several arguments against Smith's class definition. First, with respect to the geographical scope of the class, American Sugar states that the class petition is "evasive" and does not specify which areas of St. Bernard and Orleans Parishes were impacted by the alleged incident.[40] American Sugar proposes using the 13 addresses of the *Alkurd* plaintiffs to estimate the outer geographical boundaries of the putative class, and submits a declaration by Richard Poche, a certified professional in the field of geographic information systems, setting forth

---

[38] *Id.* at 10–11.
[39] R. Doc. No. 1-1, at 9 ¶ 18.
[40] R. Doc. No. 1, ¶¶ 28, 32.

Poche's method for drawing the outer boundaries of the class.[41]

Second, with respect to determining which individuals within the specified geographic area should be included in the class, American Sugar submits that *all* residents of this area should be included.[42] Poche tabulated the population of this area according to Census Bureau information, concluding that 15,637 individuals resided in the area in 2020.[43] Accordingly, American Sugar submits that the putative class consists of at least 15,637 people.[44]

Smith, in turn, challenges American Sugar's class definition and methodology

---

[41] R. Doc. No. 22-1. Poche plotted the 13 residential addresses of the 48 *Alkurd* plaintiffs on an electronic map. Poche used these addresses to establish the outer boundaries of the area in which American Sugar's proposed class resides. *Id.* ¶ 5–6.

[42] Chief among American Sugar's arguments pertaining to Smith's class definition is the assertion that it is a "fail-safe" class definition, meaning that it "includes subjective criteria in the definition (for example, persons "who have legally cognizable damages") which cannot be determined until after a trial on the merits . . . ." R. Doc. No. 22, at 12 n.5 Accordingly, American Sugar argues that the Court should "disregard the subjective portions of the class definition (e.g., persons 'who have legally cognizable damages') and focus on the objective portions (e.g., 'persons . . . residing in the Parishes of St. Bernard and/or Orleans')." *Id.* American Sugar cites two unpublished district court cases in support of its proposed rule against "fail-safe" class definitions; however, the Fifth Circuit has repeatedly and explicitly declined to adopt a rule against "fail-safe" class definitions. *See, e.g.*, *In re Rodriguez*, 695 F.3d 360, 369–70 (5th Cir. 2012) (citing *Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999); *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993)). Indeed, in several of the cases discussed herein, the Fifth Circuit approvingly adopts class definitions that would be classified as "fail-safe." *See infra*, p. 14. Thus, the Court will not reject Smith's class definition on this basis.

[43] R. Doc. No. 22-1, ¶ 7.

[44] American Sugar argues that its proposed geographical area is a conservative estimate, because it "assumes that the 48 individual [*Alkurd*] plaintiffs all live on the outer boundaries of the impacted area, which would be unlikely." R. Doc. No. 22, at 11. Additionally, plaintiff's class definition includes residents of the parishes of St. Bernard and Orleans, but all of the *Alkurd* plaintiffs reside in St. Bernard Parish; accordingly, American Sugar asserts that, assuming there are unnamed plaintiffs in Orleans Parish, the geographic scope of the class is larger in reality. *Id.*

on several bases. First, Smith argues that using non-class members—the *Alkurd* plaintiffs—"to contrive a boundary for the putative class is not methodologically sound."[45] Smith argues that several of the *Alkurd* plaintiffs' addresses are "obvious outliers," and that, for instance, the removal of two of these "outliers" would "reduce[] the geographic area by approximately seventy-five percent." Second, Smith challenges the inclusion of all residents in the demarcated geographical area, arguing that not all such residents would have been home at the time the explosion and fire occurred.[46] Third, Smith argues that the estimate is flawed because it did not account for dispersion patterns of the fire and release of chemicals.[47]

The Court concludes that American Sugar's approach is overly broad and methodologically unconvincing. Indeed, the Fifth Circuit has rejected similar definitions and methodologies in class actions arising from chemical plant explosions that caused chemicals to be released into the air. For instance, in *Berniard v. Dow Chemical Co.*, 481 F. App'x 859 (5th Cir. 2010), the removing defendants defined the putative class according to "census data of the various geographical areas referred to in the several pleadings and complaints." *Id.* at 863. The Fifth Circuit described this methodology as "speculative and unconvincing" and concluded that these "bald exposure extrapolations [were] insufficient to establish the likely number of persons affected by the release [of chemicals]. . . ." The Court ultimately concluded that the defendants had "overstate[d] the reach of the plaintiffs' petitions by improperly

---

[45] R. Doc. No. 28, at 3.

[46] *Id.* at 4.

[47] *Id.* at 5.

equating the geographic areas in which potential plaintiffs might reside with the population of the plaintiff class itself." *Id.*

The Fifth Circuit applied a similar analysis in *Perritt v. Westlake Vinyls Co., L.P.*, 562 F. App'x 228 (5th Cir. 2014), which also involved an explosion at a chemical plant. The class petition defined the class as "persons in or near the community of Geismar, Louisiana who sustained compensable damages" from the explosion at the chemical plant. *Id.* at 231–32. There, as here, the removing defendants sought instead to define the class as consisting of *all* persons residing near the location of the explosion. *Id.* The Fifth Circuit rejected the defendants' definition, reiterating that such a definition "improperly equat[ed] the geographic areas in which potential plaintiffs might reside with the population of the plaintiff class itself." *Id.* (quoting *Berniard*, 481 F. App'x. at 864). Further, the court concluded that the removing defendant's supporting affidavit, which "[did] little more than recapitulate census numbers of the allegedly affected areas and identify the scope of the 'shelter-in-place' order," could not sustain jurisdiction. *Id.* at 232.

Finally, in *Cannon v. Dow Chemicals Co.*, No. 08-1397, 2008 WL 2308897 (E.D. La. June 2, 2008) (Berrigan, J.), another case arising from a chemical plant explosion, a section of this Court rejected the removing defendant's "speculative population estimates . . . . based on the entire population of St. Charles Parish," *id.* at *3, where the plaintiffs had instead defined the class as "all persons and entities located on the west bank of St. Charles Parish . . . who sustained property damage, personal injuries, emotional, mental or economic damages and/or inconvenience or

evacuation as a result of the incident," *id.* at *1.

In sum, "[American Sugar's] methodology is speculative and unconvincing. [It] overstate[s] the reach of [Smith's petition] by improperly equating the geographic areas in which potential plaintiffs might reside with the population of the plaintiff class itself. Further, the comparisons that [American Sugar] make[s] to damage recovery in similar cases [are] too attenuated to satisfy [its] burden." *Berniard*, 481 F. App'x at 863–64.

To be sure, American Sugar, like the removing defendants in the cases discussed above, finds itself in the unenviable position of being required to bring sufficient specificity to the generalized, factually sparse claims set forth in the class petition. American Sugar insists that Smith "has avoided taking a position on the number of class members and simply argues that ASR has not proven the size of Plaintiff's proposed class,"[48] and it seems to suggest that Smith ought to adduce further evidence in support of its claims as to the total quantum of recovery.

American Sugar correctly notes that the Supreme Court and Fifth Circuit have recently stated that "'[i]f the plaintiff contests the defendant's allegation [as to the amount in controversy],' then '*both sides* submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Carter*, 643 F. App'x 371, 375 (5th Cir. 2016) (quoting *Dart*, 135 S.Ct. at 553–54) (emphasis added). However, *Dart*'s pronouncement that "both sides submit proof" does not change the fact that the burden lies with the defendant. *See,*

---

[48] R. Doc. No. 22, at 9 (citing R. Doc. No. 9-1, at 3).

*e.g.*, *Robertson*, 814 F.3d at 240 (post-*Dart*, burden remains with the removing defendant). After all, for removal to be proper, the district court must "'find[], by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Dart*, 574 U.S. at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)). Because American Sugar is the party arguing that removal is proper, it still bears the burden of demonstrating the jurisdictional amount by a preponderance of the evidence. The party arguing that removal is improper may submit evidence insofar as it negates or contradicts the removing party's evidence. *See also, e.g.*, *Statin v. Deutsche Bank Nat. Tr. Co.*, 599 F. App'x 545, 547 (5th Cir. 2014) ("After it receives any relevant evidence from both sides, the district court can assess whether the Defendants have met their burden of demonstrating by a preponderance of the evidence that the amount in controversy was satisfied at the time of removal." (citing 28 U.S.C. § 1446(c)(2)(B))).

Finally, the fact that "no antiremoval presumption attends cases invoking CAFA," *Carter*, 643 F. App'x at 374, does not relieve the defendant of its burden. *See*, *e.g.*, *Berniard*, 481 F. App'x at 864 (courts need not "err in favor of federal jurisdiction" where defendants "have not met their burden of demonstrating plausibly that the $5 million amount in controversy is apparent").

While American Sugar need not prove that the jurisdictional amount is satisfied to a legal certainty, it must prove that it is more likely than not that the jurisdictional amount is satisfied. It has not done so.

**B. Jurisdiction Pursuant to 28 U.S.C. §§ 1332(a) and 1367**

Diversity jurisdiction exists where the action is between "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In class actions, "when the federal court has jurisdiction over at least one member of the class by virtue of (1) diversity of citizenship and (2) a sufficient jurisdictional amount, that court has supplemental jurisdiction over all diverse class members, including those whose claims fall short of § 1332's amount-in-controversy threshold." *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 873 (5th Cir. 2002); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005).[49]

In class actions brought pursuant to Louisiana Code of Civil Procedure Article 591, *et seq.*, "[a]ll awardable attorney's fees . . . are attributed to the class

---

[49] The Court notes that the parties agree that there is complete diversity between the named plaintiff, Smith, and defendant, American Sugar. However, American Sugar has not alleged, nor provided any evidence regarding, the citizenship of unnamed class members. American Sugar's proposed class consists of "persons . . . residing in the Parishes of St. Bernard and/or Orleans." R. Doc. No. 22, at 10 n.5. However, "[a] party's residence in a state alone does not establish domicile. Domicile requires residence in the state and an intent to remain in the state." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007) (citing *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974); *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989)). In the CAFA context, the Fifth Circuit has concluded that,"[d]espite the logistical challenges of offering reliable evidence [of class members' citizenship] at [the] preliminary jurisdictional stage," courts may not "make a citizenship determination based on a record bare of any evidence showing class members' intent to be domiciled in Louisiana." *Preston*, 485 F.3d at 802. There is no reason to conclude that this Court's inquiry should be any less stringent where a defendant seeks to establish subject matter jurisdiction over a class action pursuant to diversity and supplemental jurisdiction rather than CAFA. Thus, this is another basis upon which American Sugar has not met its burden in establishing jurisdiction.

representatives to the exclusion of other members of the class." *Harvey v. Mosaic Fertilizer*, No. 06-9510, 2007 WL 861183, at *1 (E.D. La. Mar. 19, 2007) (Lemmon, J.) (citing *Grant*, 309 F.3d at 870–71; La. Code Civ. Proc. art 595(A)). Thus, "when a putative Louisiana plaintiffs' class advances a cause of action, such as tort or strict liability, for which Louisiana makes no separate provision for attorney's fees, the aggregate fee allowable under article 595(A) shall be attributed entirely to the class representatives and included in calculating the amount in controversy." *Grant*, 309 F.3d at 876–77.

At the outset, the Court notes that it is unclear whether American Sugar intends to assert that the Court has diversity jurisdiction over the entire putative class—which would require that the claim of each plaintiff, named and unnamed, exceeds $75,000—or that the Court has diversity jurisdiction over Smith's claims, and thus may exercise supplemental jurisdiction over the claims of all diverse class members, including those that do not exceed $75,000. If American Sugar established the latter, it would not need to prove that each class member's claim exceeds $75,000.[50] In its notice of removal and opposition memorandum, American Sugar

---

[50] Notably, the Supreme Court's holding in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), which established that courts may exercise supplemental jurisdiction over diverse class members' claims if one plaintiff meets the diversity jurisdiction criteria, renders the traditional diversity jurisdiction approach "largely irrelevant" with respect to class actions. 2 William B. Rubenstein, *Newberg on Class Actions* § 6:9 (5th ed.). After all, "[i]f the named plaintiff has more than the required amount in controversy, *Exxon* holds that the supplemental jurisdiction statute will enable her to bring along the other class members' claims[,] even those below the jurisdictional amount." *Id.*

argues only that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a),[51] and makes no mention of supplemental jurisdiction. However, American Sugar primarily references *Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864 (5th Cir. 2002), which, as noted above, pertains to the exercise of supplemental jurisdiction in class actions.

To the extent that American Sugar asserts that this court has diversity jurisdiction over the claims of all plaintiffs, named and unnamed, the Court concludes that it does not. For the reasons stated *supra*, pp. 7–11, American Sugar has not demonstrated that the claims of *any* plaintiff—let alone *all* plaintiffs—individually exceed $75,000.

However, to the extent that American Sugar is attempting to assert that the Court has diversity jurisdiction over Smith and that the Court may exercise supplemental jurisdiction over diverse class member's claims, the Court will also address that issue.

American Sugar asserts that Smith's "individual damages plus the potential attorney's fees for the class, either separately or in combination, exceed the $75,000 jurisdictional threshold."[52] American Sugar states, assuming that attorney's fees were awarded at 25% of the total class recovery, that attorney's fees would exceed $75,000 if the total class recovery exceeds $300,000; further, if the average class member recovery is $1,000, "the number of class members required to achieve a

---

[51] *See, e.g.*, R. Doc. No. 1, ¶ 14.
[52] R. Doc. No. 1, ¶ 36.

$300,000 class damage award would be about 300 class members."[53]

Smith raises several arguments with respect to attorney's fees. For one, he notes that his petition does not include a request for attorney's fees.[54] American Sugar counters that the amount in controversy should nevertheless include attorney's fees, because Smith's petition expressly seeks to proceed as a class action pursuant to Louisiana Code of Civil Procedure Article 591, *et seq.*, which includes an attorney's fee provision, and because the prayer for relief seeks "[a]ny and all general, legal, or equitable relief to which plaintiffs, and all those similarly situated, may be entitled."[55] The Court agrees that this language is sufficiently expansive to include attorney's fees. Further, Louisiana law provides that "a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.*" *Grant,* 309 F.3d at 869 (quoting La. C. Civ. P. art. 862) (emphasis in original).

Additionally, Smith asserts that his irrevocable stipulation precludes him from accepting a judgment, including attorney's fees, in excess of the jurisdictional minimum.[56] The stipulation states, among other things, that "[j]udgment shall not be rendered herein in favor of Jimmie Smith, Jr., individually, or in any other court of any jurisdiction, in excess of $75,000.00, exclusive of interests and costs for any

---

[53] R. Doc. No. 22, at 12–13.

[54] R. Doc. No. 28, at 5.

[55] R. Doc. No. 22, 13–14 (citing R. Doc. No. 1-1, ¶¶ 17, 22).

[56] *See, e.g.*, R. Doc. No. 9-1, at 16–17; R. Doc. No. 28, at 5–6.

one plaintiff individually."[57]

American Sugar argues that the Court should disregard Smith's stipulation, as it pertains to attorney's fees, for two reasons. First, American Sugar contends that, "contrary to Plaintiff's argument that he waived attorneys' fees in his stipulation, the stipulation noticeably does not mention attorneys' fees anywhere."[58] However, just as the Court concluded that the class petition's language was broad enough to encompass attorney's fees, the Court also concludes that the stipulation language is broad enough to encompass attorney's fees. *See, e.g.*, *Pesole v. Health Care Serv. Corp.*, 277 F. Supp. 3d 866, 870–71 (N.D. Tex. 2017) (interpreting stipulation's use of the term "judgment" to encompass attorney's fees); *Groh v. Travelers Ins. Co.*, No. 07-6836, 2008 WL 5216221, at *2–3 (E.D. La. Dec. 12, 2008) (Fallon, J.) (concluding that a binding disclaimer waiving the right to collect "any amount" above the jurisdictional threshold included attorney's fees); *Real T, LLC v. State Farm Fire & Cas. Co.*, No. 07-8754, 2008 WL 4974862, at *2 (E.D. La. Nov. 18, 2008) (Lemelle, J.) (same). Accordingly, Smith, by stipulating in various terms that neither he nor his attorneys will accept judgment in excess of $75,000, has effectively limited his recovery of attorney's fees to $75,000, less the amount of damages he recovers.

Second, American Sugar states that a putative class representative cannot waive the rights of absent class members.[59] As noted above, the Court concurs with

---

[57] R. Doc. No. 1-1, at 14 ¶ 6.
[58] R. Doc. No. 22, at 13. (citing R. Doc. No. 1-1 at 13).
[59] R. Doc. No. 22, at 13.

this proposition as a general matter, but concludes that it is inapplicable to the issue of attorney's fees in this case because attorney's fees are reserved exclusively for class representatives in class actions brought pursuant to Louisiana Code of Civil Procedure, article 595(A).

Although American Sugar cites to *Pendleton v. Parke-Davis*, No. 00-2736, 2000 U.S. Dist. LEXIS 18410 (E.D. La. Dec. 7, 2000) (Porteous, J.), in support of its argument that class representatives cannot waive attorney's fees on behalf of the class, *Pendleton* actually cuts against this argument. Unlike the present action, the class action in *Pendleton* was brought pursuant to Louisiana Civil Code article 2545. *Id.* at *14. "Attorney fees recoverable under Article 2545 are in addition to actual damages and are paid directly to the Plaintiffs by the Defendants . . . ." *Id.* at *15. If the right to recover attorney's fees under Article 2545 was waived, "then attorney fees [would] only be awarded under Article 595." Under Article 595, in the absence of a fund set aside for attorney's fees, "said attorney fees [would] be paid out of the damages recovered by the Plaintiffs, thereby reducing the amount of damages that each class member actually receives." *Id.* Accordingly, the Court would not accept the stipulation at issue, because waiving attorney's fees under Article 2545 was not in the best interests of the class. *Id.* at *16.

By contrast, because the present action was brought pursuant to Article 595, Smith's stipulation can only redound to the benefit of the rest of the class, because it limits the amount of attorney's fees that may be deducted from the individual amount that each class member would otherwise recover.

22

In sum, the Court concludes that Smith's stipulation is valid insofar as it waives Smith's right to collect any judgment exceeding $75,000, including damages and attorney's fees. Accordingly, the Court does not have diversity jurisdiction over Smith's claims, and therefore may not exercise supplemental jurisdiction over the rest of the class's claims.

## IV. CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the motion to remand is **GRANTED**, and the above-captioned action shall be remanded to the 34th Judicial District Court for the Parish of St. Bernard.

**IT IS FURTHER ORDERED** that the motion[60] to dismiss is **DENIED** as moot.

New Orleans, Louisiana, February 8, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[60] R. Doc. No. 16.